## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW MEXICO

**MICHAEL SALCIDO,**

       **Plaintiff,**

**vs.**                                     **No. CV 06-216 RLP**

**JO ANNE B. BARNHART,**
**COMMISSIONER OF SOCIAL SECURITY,**

       **Defendant.**

### MEMORANDUM OPINION AND ORDER

This is an appeal from a final decision of the Defendant Commissioner under the Social Security Act.  This court has jurisdiction pursuant to §42 U.S.C.  405(g).

### Procedural Background

Michael Salcido ("Plaintiff" herein)  filed applications for Disability Insurance Benefits and Supplemental Security Income in November 2002, claiming disability as of May 2000. [Tr. 62, 253]. He subsequently amended his claimed date of onset of disability to August 29, 2001, the day after a prior application for benefits was denied.  [Tr. 261; Docket No. 14, Ex. A].  His applications were denied in August 2003 and again in February 2004.  [Tr. 36, 252, 35, 247, 251].  Following an April 5, 2005,  hearing,  an administrative law judge ("ALJ" herein) issued a decision dated October 12, 2005, finding that Plaintiff was not disabled under the Social Security Act.  The Appeals Council declined review on February 23, 2006.  [Tr. 18-27].  This appeal followed.

### Standard of Review.

Judicial review under §42 U.S.C. 405(g) is limited to whether Defendant's decision is supported by substantial evidence in the record as a whole and whether Defendant applied the correct

legal standards.[1]   Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[2]  "[A] decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it."[3] Because judicial review is based on the record as a whole, I have meticulously examined the record in order to determine if the evidence supporting the Commissioner's decision is substantial, taking"into account whatever in the record fairly detracts from its weight."[4]   However, I may not reweigh the evidence or substitute my discretion for that of the Commissioner. [5]

<u>The Five-Step Sequential Evaluation Process and The ALJ's Decision</u>

The ALJ is required to follow a five-step sequential evaluation process to determine whether a claimant is disabled.[6]   The claimant bears the burden of establishing a *prima facie* case of disability at steps one through four.[7]   The ALJ found that Plaintiff was not engaged in substantial gainful activity [step one]; that he had severe[8] and non-severe impairments[9] [step two]; that his impairments

---

[1]*See White v. Massanari*, 271 F.3d 1256, 1257 (10th Cir.2001) (*citing Castellano v. Sec'y of Health & Human Servs*., 26 F.3d 1027, 1029 (10th Cir.1994)).

[2]*Id.* (q*uoting Castellano*, 26 F.3d at 1028).

[3]*Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir. 1988).

[4]*Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994).

[5]*Kelley v. Chater*, 62 F.3d 335, 337 (10th Cir. 1995).

[6]*Williams vs. Bowen*, 844 F.2d 748, 750-52 (10th Cir.1988).

[7]*See id.* at 751 & n. 2.

[8]Severe impairments found by the ALJ  included degenerative disc disease of the cervical and lumbar spine, right rotator cuff tendonitis and impingement and degenerative changes in the posterior horn of the right medial meniscus.  (Tr. 20).

[9]Dysthymia. (Tr. 20).

did not meet or medically equal a listed impairment [step three]; that he retained the residual functional capacity for a limited range of sedentary work and therefore could not return to his past relevant work [step four]; that he was not entirely credible; that there were a significant number of jobs in the national economy he could perform, specifically citing to two jobs described by a vocational expert [step five].

<u>Issues Raised on Appeal</u>

The following issues are raised on appeal:

A.    Whether the ALJ's rejection of the opinions of Plaintiff's treating doctors was supported by substantial evidence and the application of correct legal principles;

B.    Whether the ALJ's reliance on the testimony of the vocational expert was supported by substantial evidence and the application of correct legal principles; and

C.    Whether the ALJ's pain and credibility findings were supported by substantial evidence and application of correct legal principles.

<u>Vocational and Medical Evidence</u>

Plaintiff was born on February 8, 1962.  He attended school to the 11th grade, and worked in the construction trades.  Plaintiff suffered a back injury in May 2000.  The medical evidence establishes that he has pain producing impairments affecting his lower back[10], cervical spine[11], right

---

[10]MRI of October 26, 2000 documented  mild to moderate degenerative disk changes at L4/5 and L5-S1, a disc protrusion at  L5/S1 impinging the inferior aspect of the left foramen and a small central disc protrusion at L4/5 without impingement [Tr. 130]; x-ray of April 12, 2001, documented spondylolysis of L/5 on the left. [Tr. 154].  Nerve conduction studies obtained October 28, 2003 indicated left peroneal neuropathy or L5 radiculopathy [Tr. 176].

[11]X-rays obtained prior to July 3, 2003, documented multi-level cervical degenerative disc disease [Tr. 184]; MRI of the cervical spine taken November 13, 2003, confirmed mild to moderate degenerative disc changes at C5/6 and C6/7. [Tr. 182].

knee[12] and shoulders[13].   His treatment for these conditions has included narcotic pain medication,

medication for nerve pain, sleep medication, anti-inflammatory medication, muscle relaxants, physical

therapy, nerve blocks to the thoracic spine and cervical spine, steroid injection of the right shoulder

and epidural steroid injection into the L4/5 disc space.  (Tr. 135-139, 140-149, 179, 213, 220, 224,

228, 240, 244-245, 145, 185, 173-4, 186, 171).  He has complained of depression and has been

prescribed anti-depressant and anti-anxiety medications.  (See, e.g., Tr. 140, 139, 136, 221, 158, 173-

4, 213, 220).

<u>Discussion</u>

A.    *WHETHER THE ALJ'S REJECTION OF THE OPINIONS OF PLAINTIFF'S*
       *TREATING DOCTORS WAS SUPPORTED BY SUBSTANTIAL EVIDENCE*
       *AND THE APPLICATION OF CORRECT LEGAL PRINCIPLES.*

Plaintiff contends that the ALJ erred by failing to discuss the weight, if any, he afforded to the

statement of Drs. Carmody and Jain that Plaintiff was disabled, to the finding of decreased grip

strength made by Dr. Pastrana, or findings of Drs. Flores and Pastrana that Plaintiff had difficulty

walking.

The Tenth Circuit has held that "[t]he ALJ must give controlling weight to the treating

physician's opinion, provided that opinion is well-supported [ ] and is not inconsistent with other

substantial evidence."[14]  Further, an ALJ must "give good reasons in [the] notice of determination or

---

[12]MRI of the right knee obtained April 17, 2001 documented degenerative changes.  [Tr. 150].

[13]MRI of the right shoulder taken January 30, 2003, documented tendonitis or a rotator cuff tear with impingement. [Tr. 156, 186].

[14]*White v. Barnhart*, 287 F.3d 903, 907 (10th Cir.2001) (quotation and alteration omitted).

4

decision" for the weight assigned to a treating physician's opinion[15], and  the ALJ's decision "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."[16] Opinions typically accorded controlling weight involve the "nature and severity of the claimant's impairments including the claimant's symptoms, diagnosis and prognosis, and any physical or mental restrictions."[17]  When a treating physician also offers an opinion that the claimant is totally disabled, that opinion "is not dispositive because final responsibility for determining the ultimate issue of disability is reserved to the [Commissioner]."[18]  It is within this legal framework  that I examine the opinions at issue.

      1.     Dr. Carmody.

      Dr. Carmody is a family practitioner and Plaintiff's primary care physician.  Treatment records from Dr. Carmody document numerous office visits between April 2, 2002 and February 13, 2004. Dr. Carmody's records never record a complete physical examination.  He occasionally documented physical findings indicating objective evidence of pain[19] and an unquantified decrease in mobility[20].

      The ALJ discussed Dr. Carmody's records and opinion in some detail, and refused to give his

---

[15]*Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003), citing 20 C.F.R. § 404.1527(d)(2); Social Security Ruling 96-2p, 1996 WL 374188, at *5; *Doyal v. Barnhart*, 331 F.3d 758, 762 (10th Cir.2003).

[16]SSR 96-2p, 1996 WL 374188, at *5.

[17]*See Castellano.*, 26 F.3d  at 1027.

[18]*Id.*

[19]April 25, 2002 - mild tenderness in the t-spine muscles (Tr. 148);  April 28, 2003 - Pain with full extension/abduction right shoulder (Tr. 224).

[20]April 3, 2002 - decreased forward flexion (Tr. 149); June 24, 2002- poor mobility and motion of the lumbar spine (Tr. 147).

opinion controlling weight because "it merely restates the claimant's subjective complaints and is not supported by objective findings." (Tr. 25). The ALJ accorded Dr. Carmody's findings and opinions some weight, accepting that Plaintiff experienced pain and reduced range of motion, and that his residual functional capacity was additionally reduced by the need for narcotic pain medication. Based on the lack of specificity and objective observations contained in the Dr. Carmody's records, the ALJ gave as much credit to Dr. Carmody's opinions and findings as the record could support. Her reasons for limiting the weight accorded to Dr. Carmody's opinions and findings are specific and legitimate, and provide this court with the ability to conduct a meaningful review.

2.    Dr. Jain

Dr. Jain is a neurologist who saw Plaintiff from 2001 to 2005. Rather than providing his office records, Dr. Jain submitted a one page summary of his treatment of Plaintiff, which contained no objective findings other than a reference to an unquantified decrease in mobility in the knees, cervical and lumbar spine. (Tr. 246).

The ALJ referred to Dr. Jain's care, the specifics of which were obtained from Plaintiff's testimony and the records of other physicians. (Tr. 22, 25). The ALJ noted that "Dr. Jain has not provided detailed treatment notes with clinical findings to support his two very broad statements of disability." (Tr. 25). The ALJ also noted inconsistencies between statements in Dr. Jain's letter summary and other evidence of record.[21]   By citing to the absence of well documented treatment records and inconsistencies between Dr. Jain's statements and other evidence of record, the ALJ adequately expressed her reasons for rejecting Dr. Jain's opinions. I find that the ALJ stated specific

---

[21]For example, Dr. Jain's letter summary stated that Plaintiff used crutches. Plaintiff testified he used a cane, but never mentioned needing to use crutches  (compare Tr. 246 with Tr. 284).

6

and legitimate reasons for discounting the weight accorded to Dr. Jain's opinions, and provide this court with the ability to conduct a meaningful review.

      3.     Dr. Flores

      Dr. Flores is a pain specialist who evaluated Plaintiff after referral by Dr. Carmody. (Tr. 135-136). The administrative record does not contain Dr. Flores' initial treatment note[22], but does include two office visits dated March 4 and May 2, 2003. (Tr. 244-245, 240). Dr. Flores recorded a complete and detailed physical examination on March 4, which documented numerous objective signs of pain and reduced mobility, including SI joint tenderness, antalgic gait[23], limited range of motion of the right shoulder and tenderness of both knees. (Tr. 244-245). Dr. Flores commented that Plaintiff was severely disabled but whether or not he was capable of working would depend on his response to a different type of physical therapy[24]. When Plaintiff returned to Dr. Flores two months later he had improved, reporting decreased back, hip, knee and shoulder pain. Dr. Flores stated that he would determine the need for additional treatment after the completion of physical therapy. (Tr.240). There is no indication that Plaintiff returned to Dr. Flores thereafter.

      The ALJ did not reject Dr. Flores' opinions or findings. Instead, she noted that there was no indication in the record that Plaintiff had completed the physical therapy prescribed by Dr. Flores. Further, to the extent Plaintiff complains that the ALJ did not discuss the weight accorded Dr. Flores observations regarding his ability to walk, it is clear that the ALJ did credit this opinion, in that she

---

[22] In a treatment note dated March 4, 2003, Dr. Flores stated that Plaintiff was seen on January 3, 2003. (Tr. 244). There is no copy of the January 3, 2003 record in the administrative file.

[23] "A characteristic gait resulting from pain on weight bearing in which the stance phase of gait is shortened on the affected side." *Stedman's Medical Dictionary*, 27th Ed. 2000.

[24] No physical therapy records were contained in the Administrative Record.

found that Plaintiff was limited to sedentary work.

    4.    Dr. Pastrana

Dr. Pastrana is a family practitioner.  (Tr. 218)  He conducted a consultative examination of Plaintiff at the request of the Disability Determination Unit.  He observed that Plaintiff had "slight to moderate difficulty" walking, walked with a slow gait, and used a knee brace "which (he) did not need." (Tr. 164).  Dr. Pastrana's examination included, among other things, evaluation of Plaintiff's hand function and measurement of his upper extremity ranges of motion.[25]

The ALJ referred at length to the observations recorded in Dr. Pastrana's physical examination. (Tr. 24).  Her residual functional capacity findings track his evaluation of Plaintiff's hand function and ability to sit.  (Tr. 22).  Although Dr. Pastrana found that Plaintiff's grip strength on the right was decreased, he also stated that this did *not* affect the ability to handle objects or use his hands and fingers for fine manipulation.  (Tr. 164-165, 169).   The specificity with which the ALJ discussed Dr. Pastrana's findings establish that she applied correct legal principles in evaluating those findings, and provide this court with the ability to conduct a meaningful review.

    B.    *WHETHER THE ALJ'S RELIANCE ON THE TESTIMONY OF THE VOCATIONAL EXPERT WAS SUPPORTED BY SUBSTANTIAL EVIDENCE AND THE APPLICATION OF CORRECT LEGAL PRINCIPLES.*

Plaintiff's challenge to the ALJ's reliance of the testimony of the VE focuses on his ability to reach.  The ALJ found that Plaintiff had the physical residual functional capacity for:

> a limited range of sedentary exertional level work.  The claimant has the ability to lift and/or carry 10 lbs occasionally and frequently . . .; **reach overhead occasionally** .

---

[25]Dr. Pastrana recorded decreased grip strength (3-4/5 left hand and 3/5 right hand); shoulder flexion (raising the arm forward) of 100 degrees; shoulder abduction (raising the arm to the side) of 120 degrees; the ability to make a fist; no limitation in finger extension, elbow ranges of motion; some limitation in palmer flexion of the right hand and decreased range of shoulder range of motion bilaterally.  (Tr. 164, 166).

. . . **Extending the elbow in order to reach within arms' length in front of himself is not limited**, nor or fine manipulation, feeling, and handling.

(Tr. 22) (emphasis added).

The ALJ used this RFC in posing a hypothetical question to the vocational expert. (Tr. 282-284, 286).

> I would like you to consider the following hypothetical: an individual who can lift and carry no more than 10 pounds . . . and with the same limitations previously stated (Tr. 286) . . . Reaching in all directions, including overhead, is limited to an occasional basis; however, extending beyond the elbow in order to reach within arm's length in front of himself is not limited, nor is manipulation limited – fine manipulation, feeling and handling.  (Tr. 282).

Underlying support for the described reaching capabilities is contained in two evaluations:

? The medical examination by Dr. Pastrana quantified decreased range of motion for shoulder flexion and extension.  The diagrams provided with this evaluation indicate that Plaintiff retained the ability to reach forward at arms length.  (Tr. 165, 166-165).

? The evaluation by non-examining physician Eileen Brady, M.D., which utilized the ranges of motion measured by Dr. Pastrana to render an opinion regarding the extent of Plaintiff's reaching limitations. (Tr. 188-190).

The VE testified that two jobs could accommodate these limitations: U.S. Department of Labor Dictionary of Occupational Titles, Vol. I and II, DOT ¶789.687-022 (hand labeler) and ¶788.584-010 (hand sorter) (4th Ed., revised 1991).  She further testified that there were significant numbers of these jobs available in the regional and national economies.[26]  The Commissioner concedes that there is an unexplained conflict between the VE's testimony and the Dictionary of Occupational Titles

---

[26]In excess of 2,500 of each job regionally, and in excess of 1 million of each job nationally.  (Tr. 287).

listing of the requirements of the job of *hand sorter*, which precludes consideration of that job at step

five of the sequential evaluation process.  Accordingly I will consider only evidence pertaining to the

remaining job.

Plaintiff's counsel asked the VE the following:

Q:      Okay.  We will take the Judge's last hypothetical.  That's the one that
         included up to 10 pounds, and I'm going to ask you to assume an ability to lift
         or carry occasionally 10 pounds, frequently less than ten pounds.  Standing or
         walking is less than two hours out of an eight-hour day with a slow gait.  And
         decreased range of motion of both shoulders, and markedly decreased grip on
         the right, which is the dominant hand, causing a limitation of grip and carrying
         objects with the right hand.  What affect would that have on the two sedentary
         jobs you've identified.

A.      That, I believe, would decrease the numbers by at least 50 percent.

Q:      And is there one particular factor, or two, or more, that cause that reduction?

A:      Yes.  The gait and the standing less than two out of eight would not affect it.
         The decreased range of motion in both shoulder, the decreased  grip on the
         dominant right hand would affect that.  There's little carrying, so that would
         not be a great affect, but the grip and range of motion of the shoulders would
         [inaudible].

(Tr. 289-290).

Plaintiff asserts that the VE's testimony does not provide substantial evidence in support of

a finding of non-disability.  Plaintiff contends that if the VE's testimony indicates he is limited to only

one sedentary job, he must be found disabled.  He also asserts that the Commissioner erred because

of an unexplained conflict between the reaching requirements for the job of *hand labeler* as contained

in the Dictionary of Occupational Titles ("DOT") and the testimony of the vocational expert.

The availability of only one sedentary occupation indicates that Plaintiff's full range of work

was significantly eroded, it does not mandate a finding that he is disabled. Such a finding would be

10

in contravention of clear statutory language requiring that a claimant be unable to engage in *any* kind of gainful employment, available nationally or regionally.[27]

The DOT does not contain a job titled *hand labeler*. The DOT job number given by the VE is titled *Buffing Turner-and-Counter*, and as described has nothing to do with labeling.[28] The DOT indicates that the job of *Buffing Turner-and-Counter*, while sedentary, requires frequent reaching.

In *Haddock v. Apfel*[29], the Tenth Circuit held "that before an ALJ may rely on expert vocational evidence as substantial evidence to support a determination of nondisability, the ALJ must ask the expert how his or her testimony as to the exertional requirements of identified jobs corresponds with the Dictionary of Occupational Titles, and elicit a reasonable explanation for any discrepancy on this point."[30] The *Haddock* court went on to state that a "valid explanation would be that a specified number or percentage of a particular job is performed at a lower RFC level than the Dictionary shows the job generally to require."[31] The VE's answers to the hypothetical questions posed by Plaintiff's counsel might have provided a reasonable explanation for the discrepancy in the reaching requirement as mandated by *Haddock* if there had also been some explanation regarding the discrepancy between the title of the job as given by the VE and that contained in the DOT, which bear

---

[27]See 42 U.S.C. §§ 423(d)(1)(A), 423(d)(2)(A), 1382c(a)(3)(A), 1382c(a)(3)(B).

[28]¶789.687-022, Buffing Turner-and-Counter: "Assembles cloth disks to be used to make fabric buffing wheels; Inserts rod in center of stack of disks. Turns disks so woven threads in cloth layers are at angle to those in adjoining layers to reduce fraying of edges in finished product. Counts specified number of discs to make one wheel while turning them. Removes turned and counted disks from rod and stacks them in tray. Lays paper strip on stack to separate each group of disks required to make one wheel."

[29]196 F.3d 1984, 1091 (10th Cir. 1999).

[30]196 F.3d at 1086 (emphasis added).

[31]*Id*. at 1091-1092.

no relation to each other.  In addition, to satisfy *Haddock*, a valid explanation that a percentage of jobs in a particular job category require a lesser RFC than the DOT indicated  must be more specific than the explanation provided here.  The VE's testimony, that "at least" half the jobs would be eliminated if reaching restrictions were considered does not provide substantial evidence as to what "specified number or percentage" of that particular job remained.

I find, therefore, that the ALJ's finding at step five of the sequential evaluation process is not supported by substantial evidence.

C.   *WHETHER THE ALJ'S PAIN AND CREDIBILITY FINDINGS WERE SUPPORTED BY SUBSTANTIAL EVIDENCE AND APPLICATION OF CORRECT LEGAL PRINCIPLES.*

In reviewing the credibility determination, the court should "defer to the ALJ as trier of fact, the individual optimally positioned to observe and assess witness credibility."[32]  Findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.[33]  While credibility is the provence of the ALJ[34], the ALJ must explain why specific evidence relevant to reach factor supports a conclusion that a claimant's subjective complaints are not credible, and must "articulate specific reasons for questioning the claimant's credibility" where subjective pain testimony is critical.[35]

The ALJ cited several reasons for finding that Plaintiff's statements were not entirely credible. For example, the ALJ compared Plaintiff's testimony that he suffered from daily, incapacitating

---

[32]*Casias v. Sec'y of HHS*, 933 F.2d 977, 801 (10th Cir. 1995).

[33]*Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995).

[34]*Hamilton v. Sec'y of HHS*, 961 F.2d 1495, 1499 (10th Cir. 1992).

[35]*Kepler Id.*

headaches, shaking in his hands[36], shocks in his extremities[37] and side effects of morphine [38] with the dearth of complaints of these maladies in the medical record. (Tr. 23).   On the other hand, the ALJ discounted Plaintiff's credibility stating that Plaintiff had little interest in any treatment option other than narcotic pain medication. (Tr. 23).  This statement is misleading.  While the record establishes that Plaintiff was not interested in pursuing a surgical option for his back condition, he did pursue other treatment options including nerve blocks and steroid injections for his back and shoulder.  (Tr. 145, 137, 141, 143, 145, 173, 186, 163, 171, 183).

On remand, the Commissioner will reevaluate Plaintiff's credibility consistent with the provisions of Social Security Ruling 96-7p.

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Reverse and Remand for Rehearing [Docket No. 11] is granted.  This matter is remanded to the Commissioner of Social Security for Additional Proceedings consistent with the opinion.  Plaintiff shall be permitted to submit additional evidence to the Commissioner.

Richard L. Puglisi
United States Magistrate Judge
(sitting by designation)

---

[36]Although Plaintiff complained of hand shaking to a consulting psychologist (Tr. 159), no treating or examining doctor recorded that complaint or noted shaking on any recorded physical examination.

[37]Plaintiff testified he had sharp "pains."  He did not testify that he experienced shocks.  (Tr. 273). The ALJ was in error to the extent she discredited him for testifying that he experienced unsubstantiated complaints of shocks.

[38]Plaintiff testified that his use of Morphine caused daily, day-long headaches, which required him to lay down two-three hours at a time, twice each day.  (Tr. 271-272).

13